Eastern District of Kentucky
**FILED**

FEB 0 3 2006

AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON

CIVIL ACTION NO. 05-230-JBC

TERRY L. LOGAN,                                                           PLAINTIFF

V.                             **PROPOSED FINDINGS OF FACT
AND RECOMMENDATION**

JO ANNE B. BARNHART, Commissioner,
  Social Security Administration,                                        DEFENDANT

\* \* \* \* \* \* \* \* \* \*

## I. INTRODUCTION

Plaintiff Terry L. Logan, by counsel, brings this action against the Commissioner of the Social Security Administration, under 42 U.S.C. § 405(g) for judicial review of the Commissioner's decision that based on his application for Disability Insurance Benefits (DIB) that was filed on June 12, 2003, he was not disabled.

This matter is before the court on cross-motions for summary judgment. [DE ##4, 5].

By Order of November 7, 2005, the district court referred this matter to the undersigned Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for a report and recommendation on dispositive matters.

## II. ADMINISTRATIVE PROCEEDINGS

Plaintiff alleged that he became disabled on November 12, 1999, at age 31, due to emotional problems, drug dependency, and back pain. (Tr. 15). Plaintiff has past relevant work (PRW) experience includes employment as a truck driver. Plaintiff's DIB application was denied initially and on reconsideration, resulting in an ALJ hearing conducted on September 21, 2004. On November 23, 2004, ALJ Don C. Paris found that plaintiff had not been disabled at any time through the date of that decision; therefore, he was not entitled to disability benefits. (Tr. 15-23).

Thereafter, on April 6, 2005, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 7-9), resulting in the filing of the present action for judicial review of the Commissioner's denial decision.

Summarizing the ALJ's findings, the ALJ found that (1) claimant has not engaged in substantial gainful activity since his alleged onset date, (2) claimant's conversion disorder, chronic mechanical back pain, status-post lumbar microdiskectomy at L4-L5, and degenerative joint disease are considered "severe" impairments; however, these impairments do not meet or equal an impairment listed in Appendix 1, Subpart P, Regulations No. 4; (3) claimant's allegations concerning his limitations are not fully credible; (4) claimant is unable to perform any of his past relevant work (PRW); (5) claimant has no transferable skills from any PRW and/or transferability of skills is not an issue in this case; (6) claimant has the residual functional capacity (RFC) to perform a significant range of sedentary work; (7) although claimant's exertional and non-exertional limitations do not permit him to perform the full range of sedentary work, using Medical-Vocational Rule 201.25 as a framework for decision-making, and based on vocational expert testimony, there is a significant number of jobs in the national economy that claimant can perform, including surveillance monitor and factory assembly work; and (8) claimant has not been under a disability, as defined in the Social Security Act, at any time through the date of the ALJ decision, November 23, 2004. (Tr. 15-23).

### III. APPLICABLE LAW

The scope of judicial review of the Commissioner's final decision is limited to determining whether the Commissioner's decision is supported by substantial evidence, see 42 U.S.C. § 405(g); Wright v. Massanari, 321 F.3d 611, 614 (6th Cir. 2003), and whether the correct legal standards were applied. Landsaw v. Secretary of Health and Human Services, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence" means such evidence as a reasonable person might accept as adequate to support a conclusion. Tyra v. Secretary of Health and Human Services, 896 F.2d 1024, 1028 (6th Cir. 1990), (quoting Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 535 (6th Cir. 1981, cert. denied, 461 U.S. 957 (1983).

In reviewing a case for substantial evidence, the court may not try the case de novo, resolve conflicts in evidence, or decide questions of credibility. Garner v. Heckler, 745 F.2d 383 (6th Cir. 1984).

## IV. THE CROSS-MOTIONS FOR SUMMARY JUDGMENT

In support of his motion for summary judgment, plaintiff asserts that (1) the ALJ failed to give proper weight to the opinion of plaintiff's treating physicians, Dr. William Witt, and Dr. James Templin, and (2) the ALJ's hypothetical question to the Vocational Expert (VE) was flawed, and (3) the ALJ erred in assessing plaintiff's credibility. For these reasons, plaintiff submits that the ALJ's decision is not supported by substantial evidence, that the Commissioner's decision should be reversed, and that he should be awarded disability benefits. Alternatively, plaintiff requests that this case be remanded for further proceedings.

In response, the defendant asserts that the Commissioner's decision is supported by substantial evidence and should be affirmed.

### Discussion/Analysis

In considering this matter, the Magistrate Judge has reviewed, in addition to the memoranda filed in support of each party's motion for summary judgment, the hearing decision, the medical evidence of record (Exhibits 1F through 10F), and the transcript of the ALJ hearing.

### A.   Weight given to the treating physician's opinion

Plaintiff states that his treating physicians are William Witt, M.D., and James Templin, M.D., and asserts that the ALJ gave insufficient weight to the opinions of these treating physicians.

A review of the medical evidence reflects that William Witt, M.D., a pain management physician, implanted a spinal cord stimulator on plaintiff in 2002 and later performed a spinal cord stimulator lead revision and pulse generator implantation on plaintiff. Dr. Witt also referred plaintiff to Dr. James Templin, a pain management physician at Good Samaritan Hospital, for a functional capacity evaluation. (Tr. 200). Thus, Dr. Templin, is an evaluating physician, not a treating physician.

3

Dr. Templin evaluated plaintiff on October 30, 2003, and reported from that evaluation, in relevant part, as follows:

> 2. Mr. Logan is unable to engage in activities requiring prolonged, standing, walking, frequent bending, stooping, kneeling, crouching, lifting, carrying, climbing or riding on any vibratory vehicles for extended distance or time. He should avoid sitting or standing for periods greater than 20 to 30 minutes at one time, one and a half hours out of eight-hour timeframe. He should avoid sitting for periods greater than 45 minutes at a time or four hours in eight-hour timeframe. He should avoid activities requiring frequent bending, stooping, kneeling, crouching, lifting, carrying, climbing. He should avoid working a [sic] cold, damp environments. He should avoid activities requiring excessive use of foot controls, legs bilaterally. He should avoid lifting items weighing greater than 15 pounds from waist level or carrying this weight for any extended distance or time or any lifting from floor level. He should avoid riding on any vibratory vehicles for extended distance or time.
> 3. . . . He should avoid any activity with arms extended or above shoulder level.
> 4. Continue treatment with Dr. Witt.

Tr. 171-72.

Thus, in his report, Dr. Templin expressed no opinion that plaintiff was totally disabled for all work activity.

In his decision, the ALJ summarized Dr. Templin's report and adopted same, as seen from the following excerpt from his decision:

> Dr. James Templin saw the claimant on October 30, 2003 for an evaluation concerning claimant's potential to return to work. His physical examination revealed decreased range of motion of the dorsolumbar spine and tenderness over the hips and legs bilaterally. The claimant also had positive straight leg raise bilaterally and decreased range of motion of the hips bilaterally. It was Dr. Templin's professional opinion that, based on physical examination and medical history, the claimant would be unable to return to any activity requiring prolonged standing, walking, bending, stooping, kneeling, crouching, lifting, carrying, climbing, or riding on any vibratory vehicles for extended distance or time. He concluded the claimant would be unable to sit or stand for periods greater than 20 to 30 minutes at one time and unable to sit for periods greater than one and a half hours in an eight-hour timeframe. He stated that claimant should avoid any activity requiring repetitive use of foot controls. Dr. Templin's restrictions limit the claimant to a significant range of sedentary work activity. (Exhibit 7F). The undersigned adopts Dr. Templin's residual functional capacity assessment, finding it is reasonable and consistent with the documented findings concerning the claimant's severe impairments.

Tr. 19-20.

The only difference between Dr. Templin's opinion concerning plaintiff's limitations on sitting and standing and the ALJ's assessment of plaintiff's restrictions on sitting and standing is as

4

follows: Dr. Templin opined that plaintiff should avoid sitting or standing for periods of greater than 20 to 30 minutes and one and a half hours out of an eight-hour time-frame; however, he then stated that plaintiff should avoid sitting for periods greater than 45 minutes at a time or four hour hours in an eight-hour time-frame (Tr. 192). Thus, it is reasonable to conclude that Dr. Templin's reference to the 20-to-30 minute limitation on sitting was an error and that Dr. Templin probably intended to refer to "walking" and standing, rather than "sitting and standing." While the ALJ's sit-stand limitation would accommodate any need to change positions, Dr. Templin's opinion and the ALJ's restrictions do differ on the total sitting or standing plaintiff could perform in an eight-hour day. Nevertheless, regardless of this apparent error in Dr. Templin's report, the ALJ adopted Dr. Templin's RFC assessment, "finding it is reasonable and consistent with the documented findings concerning claimant's severe impairments." (Tr. 20). Consequently, the Magistrate Judge concludes that the difference between Dr. Templin's opinion of plaintiff's restrictions and the restrictions imposed by the ALJ is *de minimus* and does not operate to undermine the ALJ's decision.

Although Dr. Witt is plaintiff's treating physician, Dr. Witt expressed no opinion concerning plaintiff's ability to perform work activity, and Dr. Witt referred plaintiff to Dr. Templin for such an evaluation. Therefore, plaintiff's argument that the ALJ gave insufficient weight to the opinions of his treating physicians is without merit.

**B.     The ALJ's hypothetical question to the VE**

Plaintiff also contends that the ALJ's hypothetical question to the VE was flawed "in that he stated in the question posed to her that Plaintiff would retain the residual functional capacity to perform a significant range of sedentary work. The Judge erroneously assumed the affirmative answer to the vocational question he was posing to Ms. Sparrow. His question strongly suggested or "begged" the answer he desired." Fact and Law Summary Memorandum, p. 6 - DE #4. Plaintiff also argues that the ALJ did not include in the hypothetical all of the limitations imposed by Dr. Templin.

The ALJ's hypothetical question to the VE and her answer thereto are set out below:

> Q. Okay, let me give you the following hypothetical. The Claimant has chronic mechanical back pain, is status post-lumbar surgery at L4-L5. Has degenerative joint disease and he suffers from a conversion disorder. However, he would retain the Residual Functional Capacity to perform a significant range of sedentary work. He would require a sit-stand option with no prolonged standing or walking in excess of 30 minutes without interruption. No operation of foot pedal controls. Only occasional climbing of stairs and ramp, never ladder or ropes. Only occasional non-repetitive bending, twisting, stooping, kneeling, crouching, balancing. Never crawling. He should perform no excessive above-head reaching. He should avoid working in a cold damp work environment, and he should avoid exposure to extreme heat and cold. He should avoid industrial heights, hazards, or full body vibration. He should not ride in any vibratory vehicles for extended distance or time. He should not work in close proximity to any machinery or equipment which would create a generation of local heat and body tissues of high frequency, electromagnetic equipment because of his implanted spinal cord stimulator. I assume based on the exertional limitations of that hypothetical he could not perform his past relevant work?
>
> A. No, he could not.
>
> Q. Again, giving consideration to that same hypothetical with the restrictions and limitations set out therein, and additionally giving considerations to his vocational factors – that being his age, education, and past relevant work – are there unskilled jobs that would be available to Mr. Logan in the national or regional economy.
>
> A. Yes, sir.
>
> Q. And if you'd cite examples of those please?
>
> A. Okay. At the sedentary, entry level there would be surveillance monitor. Approximately 2,000 in the state, 100,000 nationally. There would be assembly, factory type jobs. Approximately 6,000 in the state, and 300,000 nationally.

Tr. 280-81.

Based on a review of the foregoing colloquy between the ALJ and the VE, the Magistrate Judge is unpersuaded by plaintiff's argument that the ALJ's hypothetical to the VE improperly suggests the ALJ's desired answer. If anything, the ALJ's initial question to the VE suggests that plaintiff is unable to perform any of his PRW, and the VE responded that with the limitations given, plaintiff would be unable to perform any of his PRW - a answer definitely favorable to plaintiff. The Magistrate Judge is also unpersuaded by plaintiff's argument that the ALJ failed to include all of the

6

limitations imposed by Dr. Templin. A comparison of Dr. Templin's limitations with the ALJ's limitations itemized in his hypothetical to the VE refutes plaintiff's argument.

### C.     ALJ's assessment of plaintiff's credibility

Plaintiff further submits that the ALJ erred in assessing plaintiff's credibility concerning his pain and limitations by finding plaintiff only partially credible when he should have found plaintiff's testimony fully credible.

In summarizing plaintiff's testimony and evaluating plaintiff's credibility, the ALJ stated, as follows:

> The claimant described his pain as sharp, stabbing pain that generates down his legs and into the middle of his back with numbness in both legs. He stated pain is increased with any prolonged standing, walking, frequent bending, stooping, kneeling, crouching, lifting, carrying, climbing, and by riding on any vibratory vehicles for extended distance or time. The claimant's limitations are considered only partially credible since the severity described is not fully supported by the objective evidence.

Tr. 18.

In determining whether a claimant is disabled, the Commissioner considers all symptoms, including pain, and the extent to which those symptoms "can reasonably be accepted as consistent with the objective medical evidence, and other evidence." 20 C.F.R. § 404.1529(a) (2005). When the medical signs or laboratory findings document a medically determinable impairment that could reasonably be expected to produce the symptoms alleged, as in this case, the Commissioner then evaluates the intensity and persistence of the symptoms to determine how those symptoms limit the claimant's capacity for work. See 20 C.F.R. § 404.1529(c)(1) (2005). In making this evaluation, the Commissioner considers the objective medical evidence as well as information from the claimant and from treating, examining, or other medical sources, as well as other factors, such as evidence of daily activities, the frequency and intensity of pain, any precipitating and aggravating factors, medication taken and any resulting side-effects, and any other measures taken to alleviate the claimant's pain. See 20 C.F.R. §§ 404.1529(c)(2), (3) (2005).

In *Jones v. Commissioner of Social Security*, 336 F.3d 469 (6th Cir. 2003), the Sixth Circuit noted the critical distinction between an ALJ "disbelieving" a claimant and finding that the severity of the allegations was at odds with the medical evidence. Specifically, in *Jones*, the Sixth Circuit stated:

> . . . the ALJ can present a hypothetical to the vocational expert on the basis of his own assessment if he reasonably deems the claimant's testimony to be inaccurate. See Townsend v. Secretary of Health and Human Services, 762 F.2d 40, 44 (6th Cir. 1985); see also Blacha v. Secretary of Health and Human Services, 927 F.2d 228, 231 (6th Cir. 1990) (holding that the ALJ had an adequate basis to discount Mr. Blacha's credibility, where his behavior and the medical evidence were inconsistent with his testimony.).

*Jones, supra.*

In the present action, the ALJ noted that in spite of plaintiff's allegations of debilitating pain:

> . . . claimant testified that he drives to get a package of cigarettes and drives to doctor's appointments. He watches television, feeds and walks the family dog, reads magazines, calls friends on the phone, and occasionally shops at the Dollar Store with his wife. He helps wash dishes, fold laundry, dust, and other household chores.

Tr. 19.

The ALJ's credibility finding is supported by not only plaintiff's own testimony of his routine activities, but also by the medical evidence. For instance, in a Physical Residual Functional Capacity Assessment performed on July 18, 2003, by John Rawlings, M.D., Dr. Rawlings noted: "The severity of limitations not quite supported by objective evidence and that he has no evidence of recurrent disc disease and no significant motor loss. Limitations considered only partially credible." (Tr. 151). On October 5, 2003, Dr. Gary L. Higgason agreed with Dr. Rawlings' assessment of plaintiff's RFC. (Tr. 166).

It is well settled that in reviewing a case for substantial evidence, the court may not decide questions of credibility. Garner v. Heckler, 745 F.2d 383 (6th Cir. 1984). The rationale underlying this rule of law is that it is the ALJ, who has the opportunity to question and observe a claimant, is certainly in the best position to assess a claimant's credibility. Consequently, the Magistrate Judge

finds no merit in plaintiff's argument that the ALJ erred in finding plaintiff's testimony concerning his impairments and how they impacted his ability to perform work activities only partially credible.

## V. CONCLUSION

Having reviewed the administrative record, including the medical evidence, the cross-motions for summary judgment, and the applicable law concerning judicial review of the Commissioner's decision, the Magistrate Judge concludes that the Commissioner's decision that plaintiff is not disabled is supported by substantial evidence.

Accordingly, **IT IS HEREBY RECOMMENDED** that plaintiff's motion for summary judgment [DE #4] be **DENIED**, that the defendant's motion for summary judgment [DE #5] be **GRANTED**, and that this action be **DISMISSED** and **STRICKEN** from the docket.

The Clerk of the Court shall forward a copy of the Magistrate Judge's Proposed Findings of Fact and Recommendation to the respective parties who shall, within ten (10) days of receipt thereof, serve and file timely written objections to the Magistrate Judge's Findings of Fact and Recommendation with the District Court or else waive the right to raise the objections in the Court of Appeals. 28 U.S.C. section 636(b)(1)(B); Thomas v. Arn, 728 F.2d 813 (6th Cir. 1984), affirmed, 474 U.S. 140 (1985); Wright v. Holbrook, 794 F.2d 1152, 1154-55 (6th Cir. 1986); Fed.R.Civ.P. 6(e).

This __2ND__ day of February, 2006.

JAMES B. TODD,
UNITED STATES MAGISTRATE JUDGE